David WEAVER, Plaintiff,

v.

NASH INTERNATIONAL, INC., a Delaware corporation, f/k/a L.W. Nash Co., Defendant and Third Party Plaintiff,

v.

NICHOLS–HOMESHIELD, INC., Third Party Defendant.

Civ. No. 81–61–D–2.

United States District Court,
S.D. Iowa,
Davenport Division.

May 5, 1983.

---

Steven K. Warbasse, Cedar Rapids, Iowa, Ronald May, Davenport, Iowa, for plaintiff.

Charles Brooke, Davenport, Iowa, for defendant and third party plaintiff.

Greg A. Egbers, Davenport, Iowa, for third party defendant.

## MEMORANDUM OPINION, RULINGS ON MOTIONS FOR SUMMARY JUDGMENT AND ORDER OF DISMISSAL

VIETOR, District Judge.

The court has before it plaintiff's motion for partial summary judgment and defendant Nash International, Inc.'s motion for summary judgment. The motions raise the issue of whether defendant Nash International, Inc. may be held liable to plaintiff as a successor corporation to the manufacturer of an allegedly defective product under theories of negligence, strict product liability and implied and express warranties.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. There is no genuine issue as to the following material facts.

### UNDISPUTED FACTS

On June 25, 1979, plaintiff, while operating an aluminum reduction mill at his place of employment, Nichols-Homeshield, Inc., in Davenport, Iowa, was injured by the mill. The mill had been designed and manufactured in 1964 or 1965 by L.W. Nash Company, an Ohio corporation (hereinafter "Ohio corporation"), and sold to Nichols-Homeshield, Inc., where it was installed in 1965.

The Ohio corporation was formed in 1946. Shareholders included L.W. Nash and his wife, Robert U. Nash and Terry W. Nash, sons of L.W. Nash, Pat Couchenour, daughter of L.W. Nash, and her husband, James. Some shares were owned by other individuals.

On March 29, 1968, the Ohio corporation entered into a detailed written "Agreement for Sale of Assets and Business" with Aluminum Company of North America (Alcoa). Pursuant to the agreement Alcoa caused to be incorporated a Delaware corporation which was also named L.W. Nash Company (hereinafter "Delaware corporation"). Under the terms of the agreement, the Delaware corporation purchased all of the assets and the going business of the Ohio corporation. The agreement provided that liabilities not expressly assumed by the Delaware corporation were the sole responsibility of the Ohio corporation. There was no express assumption by the Delaware corporation of liabilities for negligence or product liability claims that might arise in the future.[1] The agreement expressly provided that the Delaware corporation would "have no liability or responsibility whatever" with respect to continuing warranty obligations on products manufactured and sold by the Ohio corporation on or before March 31, 1968.

Alcoa, which was not a shareholder in the Ohio corporation, has at all times been the sole shareholder of the Delaware corporation. The three "incorporators" of the Delaware corporation had no connection with the Ohio corporation. On April 3, 1968, the incorporators elected a seven member board of directors, none of whom had any connection with the Ohio corporation. The incorporators were among the initial directors. On April 4, 1968, the directors met to select officers and, *inter alia,* consider the purchase of the assets and business of the Ohio corporation. The directors selected eleven officers, seven of whom held the same positions in the Ohio corporation. The other four officers had no previous connection with the Ohio corporation. The board meeting ended with the three incorporators resigning from the board, and they were immediately replaced by L.W. Nash, T.W. Nash and R.U. Nash, who were officers,

directors and shareholders of the Ohio corporation.

Following the purchase, the Delaware corporation engaged in the design and production of special machinery and equipment, which had been the business of the Ohio corporation, in the same plant used by the Ohio corporation (until 1979) and with substantially the same workforce as the Ohio corporation had. In 1979 the Delaware corporation adopted the name Nash International, Inc.

Pursuant to the agreement the name of the Ohio corporation was changed to E.W.N., Inc. The parties to the agreement intended that E.W.N., Inc. would be dissolved in due course. However, a tax claim may have prevented the dissolution. From the record before the court it is not clear if E.W.N., Inc. is still in existence, but under the court's view of the applicable law that fact is not material.

## CONTENTIONS OF PARTIES

Plaintiff contends that the Delaware corporation is a successor of—a "mere continuation" of—the Ohio corporation and can therefore be held liable for injuries caused by the mill designed and manufactured by the Ohio corporation. The Delaware corporation (moving defendant Nash International, Inc.) contends that it is not a legally liable successor corporation.

## LAW

▐ The jurisdiction of the court is predicated upon diversity of citizenship of the parties. 28 U.S.C. § 1332. Neither party has raised a choice of law issue; both parties have briefed the law of Iowa as well as the law of other jurisdictions. The Iowa Supreme Court has adopted the most significant relationship analysis to determine what law should be applied in tort cases. *Fuerste v. Bemis,* 156 N.W.2d 831, 833 (Iowa 1968). Under the Iowa choice of law

---

1. The Delaware corporation was to maintain products liability insurance for a period of five years after March 31, 1968, with the Ohio corporation named as an additional insured; the Ohio corporation was responsible for payment of that portion of the insurance premium attributable to the Ohio corporation being named as an additional insured under the policy. Clearly, this provision does not constitute an express assumption of any liabilities.

rule the court applies the law of the state with the most significant relationship with the parties and which has the principal interest in the issue in dispute. *Berghammer v. Smith,* 185 N.W.2d 226, 230 (Iowa 1971). Plaintiff is domiciled in Iowa and he was injured in Iowa at his place of employment. The court concludes that under the Iowa choice of law rule the law of Iowa should be applied.

The general rule is that a corporation that purchases the assets of another corporation will not be held responsible for the liabilities of the selling corporation. 15 W. Fletcher, Cyclopedia of the Law of Private Corporations, §§ 7122, 7123 (rev. perm. ed. 1973 & Supp.). Four exceptions to that rule have long been recognized: (1) where there is an express agreement to assume liability; (2) where there is a consolidation or merger; (3) where the purchasing corporation is a "mere continuation" of the selling corporation; and (4) where the transaction is fraudulent. *Nelson v. Pampered Beef-Midwest, Inc.,* 298 N.W.2d 281, 287 (Iowa 1980), quoting *Luedecke v. Des Moines Cabinet Co.,* 140 Iowa 223, 226, 118 N.W. 456, 457 (1908).

Recently some courts have extended liability to successor corporations that do not come within the traditional exceptions to the no-liability rule. Three approaches have emerged: (1) product line theory; (2) expansion of the traditional merger and continuation exceptions; (3) imposition of liability on the acquiring corporation for negligent failure to warn. *See Tucker v. Paxson Machine Co.,* 645 F.2d 620, 623 (8th Cir.1981), and cases cited therein. Other courts have rejected extending liability under one or more of these approaches, either as a matter of policy or because the facts of the case did not support their application. *Tucker v. Paxson Machine Co., supra,* 645

F.2d at 626 (applying Missouri law); *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 440–41 (7th Cir.1977) (applying Wisconsin law);[2] *Travis v. Harris Corp.,* 565 F.2d 443, 447–48 (7th Cir.1977) (applying Indiana law); *Jones v. Johnson Mach. and Press Co.,* 211 Neb. 724, 729, 320 N.W.2d 481, 484 (1982) (applying Nebraska law).

■ Plaintiff relies only on the continuation exception to the rule of no liability, contending that the Delaware corporation is a "mere continuation" of the Ohio corporation. The traditional indicia of the "mere continuation" exception are a common identity of officers, directors and shareholders in the selling and purchasing corporations and the existence of only one corporation at the completion of the sale of assets. *Leannais v. Cincinnati, Inc., supra,* 565 F.2d at 439; *Travis v. Harris Corp., supra,* 565 F.2d at 447. However, as noted above, a few courts have expanded the traditional "mere continuation" exception to the no-liability rule.

■ There is no controlling decision by the Iowa Supreme Court. In the absence of a controlling state decision, this court must apply the rule it believes the Iowa Supreme Court would follow. *Luster v. Retail Credit Co.,* 575 F.2d 609, 613 (8th Cir.1978). Plaintiff has not cited any Iowa cases which demonstrate that the Iowa Supreme Court would choose to depart from the traditional rules regarding the liability of successor corporations. Plaintiff relies solely on cases from other jurisdictions. Whether the Iowa Supreme Court would expand any of the traditional exceptions to the no-liability rule under a different factual setting need not be decided. All that need be decided is whether the Iowa Supreme Court would permit the Delaware corporation to be held

**2.** In *Tift v. Forage King Industries, Inc.,* 108 Wis.2d 72, 322 N.W.2d 14 (Wis.1982), the Wisconsin Supreme Court did apply the "mere continuation" exception to a corporate successor of a sole proprietorship. The sole proprietor was one of the two original shareholders of the corporation. Although the majority professed to be applying the traditional "mere continuation" exception to the no-liability rule, the·

decision does appear to somewhat expand that exception by applying it to a situation where the predecessor manufacturer of the product was not a corporation and where the predecessor manufacturer continued to exist. (See the next paragraph of the body of this memorandum opinion for the traditional indicia of the "mere continuation" exception.)

liable as a "mere continuation" successor corporation.

■ Alcoa, the sole shareholder of the Delaware corporation, held no stock in the Ohio corporation; thus there was not even a partial continuity of ownership of the two corporations. None of the seven initial directors of the Delaware corporation were connected with the Ohio corporation, although a minority of three were almost immediately replaced by members of the Nash family who were shareholders, directors and officers of the Ohio corporation. Seven of the initial officers of the Delaware corporation held identical positions with the Ohio corporation. The Ohio corporation existed for at least some time after the Delaware corporation purchased the assets of the Ohio corporation. Under these facts the court concludes that the Iowa Supreme Court would not impose liability on Nash International, Inc. under the "mere continuation" exception to the no-liability rule. The facts are insufficient to satisfy the traditional "mere continuation" exception to the no-liability rule, and plaintiff cites no decisions or statements of the Iowa Supreme Court indicating that it would expand the "mere continuation" exception sufficiently to encompass the facts of this case.[3]

RULINGS AND ORDER OF DISMISSAL

Plaintiff's motion for partial summary judgment is denied. Defendant Nash International, Inc.'s motion for summary judgment is granted.

IT IS ORDERED that plaintiff's claims against Nash International, Inc. be, and hereby are, dismissed.

---

**3.** Plaintiff does not urge the product line or failure to warn theories that some courts have developed in expanding the traditional exceptions to the no-liability rule. Even if he had urged these theories, this court's ruling would be the same because there is nothing in the Iowa Supreme Court decisions to indicate receptiveness to such theories of liability.